## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

THERESA J. STEVENS,

     Plaintiff,

                                       Civil Action 2:14-cv-2186

   v.                                Judge James L. Graham

                                       Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

### REPORT AND RECOMMENDATION

Plaintiff, Theresa Stevens, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security  ("Commissioner") denying her application for social security disability insurance benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 17), Plaintiff's Reply (ECF No. 18), and the administrative record (ECF No. 9).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.    BACKGROUND

Plaintiff filed her application for benefits in July 2011, alleging that she has been disabled since December 10, 2010 due to depression, anxiety, and ulnar neuropathy.  (R. at 198-99, 264.)  Plaintiff's application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  Administrative Law Judge Paul Yerian

("ALJ") held a hearing on March 20, 2013, at which Plaintiff, represented by counsel, appeared and testified. (R. at 66-97.) George W. Coleman III,, a vocational expert, also appeared and testified at the hearing. On June 21, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 36-54.) On September 22, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–9.) Plaintiff then timely commenced the instant action.

## II.   HEARING TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff testified at the administrative hearing that she lives in a duplex apartment with her brother living in the upstairs apartment. (R. at 67.) She has a driver's licence, owns a car and drives once a week. (R. at 68.)

Plaintiff testified that she cannot work because of she feels "anxious all the time." (R. at 75.) She testified that she does not like to go out of her house or drive. (*Id.*) Her daughter comes to see her or she will go to her daughter's house every once in awhile. (*Id.*)

Plaintiff acknowledged that she had two surgeries on her right elbow. When asked what kind of problems she experiences with her right arm, she replied her elbow still tingles and gets numb. (R. at 77-78.) She testified it is harder to grip things and she has to use her left hand more. (R. at 78.) She testified she can make a fist with her right hand and can button, use zippers, open doors, pick up coins, use silverware, and start the ignition of her car. (*Id.*) She testified she drops things like keys and cups of water, but that it is not consistent and not related to the size or weight of the objects. (R. at 79.)

2

Plaintiff testified that she sees her primary care physician, Dr. Frazier and a counselor, but not a psychologist or psychiatrist, due to lack of health insurance.  (R. at 79-80, 87.)  She testified she has no side effects from her medications.  (R. at 82.)

She spends her day watching television or playing games on the computer.  (R. at 83.)  She also testified that she does household chores but "not very well."  (*Id.*)  She testified she will go to the grocery store once every two weeks.  (R. at 84.)  She also testified she will crochet, play board games with her daughter, and plays a "slot" video game on the computer.  (R. at 85.)  She takes care of her cat and smokes a pack and a half of cigarettes every day.  (R. at 86.)  Sometimes she wears the same clothes for a week.  (R. at 93.)  She does not attend church, belong to any clubs and has not gone to a movie theater "for the last couple of years."  (R. at 95.)  A couple years prior to the hearing, she went with her brother to see the musical, CATS.  (*Id.*)

Plaintiff testified that she had bowel problems which started when she worked at Mead.  She would take extra clothes to keep in her locker at work.  (R. at 90.)  She testified she still has these problems when she gets really nervous; she may have an attack every two to four days or as rarely as two months apart. (R. at 91-92.)

At the time of the hearing, she was receiving workers' compensation for her elbow injuries.  (R. at 95-96.)

**B.**     **Vocational Expert Testimony**

George W. Coleman III, testified as the vocational expert ("VE") at the administrative hearing.  (R. at 97-108.)  The VE classified Plaintiff's past relevant work as a forklift operator, a medium, semi-skilled position; a paper core machine operator, a light, unskilled position, which Plaintiff performed at the medium exertional level.  (R. at 99.)  The ALJ proposed a series of

hypothetical questions regarding Plaintiff's residual functional capacity ("RFC") to the VE which involved an individual who could frequently push or pull with the right upper extremity; occasionally climb ladders, ropes and scaffolds; can use the right upper extremity for frequent fingering, handling, and feeling.  Mentally, the hypothetical individual was limited to work in a relatively static environment with no fast work pace and occasional contact with supervisors or co-workers, but no contact with the general public.  (R. at 99-102.)  Based on the hypotheticals, the VE testified that Plaintiff could perform her past relevant work as a paper core machine operator.  (R. at 101-03.)

### III.    MEDICAL RECORDS

Plaintiff maintains that the ALJ's decision is not supported by substantial evidence because he failed to evaluate all the opinions in accordance with the regulations.  In formulating her argument that the ALJ did not consider all the opinions, Plaintiff refers only to treatment records related to her mental health.  The Undersigned, therefore, will focus on the medical records and opinions related to Plaintiff's mental health.

### 1.    Scioto Paint Valley Mental Health Center

Plaintiff underwent a diagnostic assessment on April 9, 2010, reporting she "does not feel like going on, denies suicidal plan or intent, hopeless."  (R. at 425.)  Plaintiff's symptoms included frequent crying spells, anhedonia, hopelessness, worthlessness, guilt, panic attacks, nightmares, sleeping too much, slowed thought processes, difficulty with concentration and short term memory.  Her attitude was found to be cooperative, speech was soft, thoughts were ordered, appearance was appropriate, insight was fair and she was oriented times three.  Plaintiff was diagnosed with major depressive disorder.  (R. at 430.)  Plaintiff was scheduled for counseling to

address depression, and to increase or maximize current coping skills. Plaintiff was also encouraged to see Dr. Frazier, her primary care physician, about restarting psychotropic medication. (R. at 429.)

The record contains a partial, undated and unsigned Functional Capacity evaluation. (R. at 561-62.) Plaintiff was found to have difficulties with interpersonal skills noting that Plaintiff's "relationships with family, school, and work are severely affected by her anxiety and depression and would adversely affect her job performance." (R. at 561.) Plaintiff was found to have serious limitations in self-direction based on mental symptomatology and work tolerance based upon limitations in her right arm and irritable bowel syndrome. (R. at 562.)

On July 7, 2010, Plaintiff was working 10 hours a week at Pickaway-Ross Joint Vocational School ("PRJVS"). She indicated that she liked her job but needed to keep looking because she was not getting enough hours. Plaintiff reported that she is doing a better job of keeping her anxiety under control, but gets exhausted from it. Plaintiff also discussed issues with her family and getting "caught in the middle." (R. at 488.)

Plaintiff met with a vocational services specialists in September 2010. The vocational services specialist reported on September 29, 2010, that Plaintiff showed up for all her appointments and was always on time. The specialist noted that Plaintiff did the things asked of her even when it made her nervous. Plaintiff asked appropriate questions and was honest about her feelings and fears. Plaintiff was extremely nervous and was crying when she showed up to go out visiting different businesses but she was early for her appointment and was determined to try. Plaintiff appeared motivated to work and was concerned with being able to do the jobs. She was willing to try several different types of employment and wanted a job where she stayed

busy.  The vocational services specialists also reported that Plaintiff has little confidence and a lot of anxiety about learning a new environment and new tasks.  The specialist maintained that a good support system in the early days of employment would be necessary for Plaintiff to be successful.  The vocational services specialists recommended that a job coach stay with Plaintiff or in close proximity the entire time to monitor her anxiety level and see how handles different situations.  (R. at 436.)

When seen for counseling on October 19, 2010, Plaintiff reported that her daughter's boyfriend had surgery and her daughter was using a walker due to her foot issues.  Plaintiff said that she was helping her daughter and boyfriend by doing their laundry, taking care of their animals, cleaning up a flea infestation in their house, and by running their errands.  She continued to be seriously depressed and anxious and was tearful during the session.  (R. at 478.)

On November 17, 2010, Plaintiff reported that she ran out of her psychiatric medications and did not call her treating physician, Dr. Frazier, for a refill.  She reported "having lost faith that meds or anything will make her feel better."  (R. at 443.)

On November 29, 2010, Plaintiff reported that she continued to be depressed, anxious, isolating, barely taking care of daily needs, but she got her bills paid, attended Thanksgiving dinner at her brother's, and attended the play CATS with him.  Plaintiff was encouraged to take advantage of any moments she gets that she does feel like doing something.  (R. at 444.)

When seen on June 8, 2011, Plaintiff reported attending a festival, sitting outside, and doing yard work.  (R. at 442.)  On July 6, 2011, Plaintiff reported going to the park with her family and sitting outside in a pool.  (R. at 441.)

On July 20, 2011, Plaintiff reported that she recently saw Dr. Frazier and he increased her dosage of Cymbalta, stopped Abilify and restarted Seroquel.  She was getting out more, fishing, spending time in the garden, and getting along with her brother.  (R. at 440.)

Plaintiff's Occupational Therapist, Laura Perrott, LPCC, completed a Daily Activities Questionnaire on August 9, 2011, in which she indicated that Plaintiff was intimidated in getting along with employers, supervisors and co-workers in attempts to return to work due to low self-esteem and low self worth.  Ms. Perrott also found that Plaintiff is unable to complete work tasks without assistance.  (R. at 438-39.)

On October 5, 2011, Plaintiff stated that she leaves her home only "when she has to." She also stated that she is scheduled to see a physical doctor for Social Security but hopes "they schedule her with someone from psychiatry as well because she will not be made eligible on her physical problems.  They are not disabling."  (R. at 524.)

On November 30, 2011, Plaintiff reported she was not crying as much and enjoyed having the family over for Thanksgiving dinner.  She reported crying throughout the interview with the Social Security psychologist.  Ms. Perrott informed Plaintiff "'that was not necessarily a bad thing."  (R. at 521.)

Plaintiff presented for a psychological examination with James Hagen, Ph.D., on April 3, 2012.  (R. at 513-16.)  On mental status examination, Dr. Hagen observed that Plaintiff presented for the evaluation on time, dressed appropriately.  She was oriented to time, person, place and circumstances.  Her mood was depressed, and she was frequently tearful during the assessment. Plaintiff was anxious when discussing her health and family problems.  Her thought processes were logical and well ordered.  She provided no history of perceptual anomalies such as

hallucinations, but her memories for recent and past events were nconsistent, due to depressive symptoms.  Her sleep was disturbed, due to GERD, which required her to sleep in a recliner in a semi-upright position.  Her appetite at the time of the evaluation was above average, and Plaintiff reported gaining 50 pounds of weight due to inactivity and appetite excess. She reported being agoraphobic and that she avoided most social and public settings.  Plaintiff indicated that her anxiety attacks often occur during sleep, with further disturbs her ability to sleep.  (R. at 515.)  Based on Plaintiff's presentation, treatment history, and psychological testing, Dr. Hagen diagnosed her with Major Depressive Disorder, Single Episode, Severe, without psychotic features; Panic Disorder with Agoraphobia; and Dependent Personality Disorder with depressive and schizoid and borderline traits.  He assigned Plaintiff a GAF (Global Assessment of Functioning) of 50.  (R. at 516.)

On April 4, 2012, Plaintiff was upset because she had been in the emergency room with her daughter who was in a coma due to low blood sugar.  Plaintiff was very upset with her daughter's physical decline which she feared was going towards death.  (R. at 518.)

On June 27, 2012, Plaintiff reported a bad panic attack and having problems with obtaining social security.  She had not been doing much outside of the house but did go fishing with her family one night the previous week.  (R. at 568.)

On July 25, 2012, Plaintiff reported making it through her brother's Fourth of July party with a bunch of people, even though she did try to find somewhere to isolate.  (R. at 567.)

On September 26, 2012, Plaintiff "appears to be doing a little better today.  She has been doing a little better with setting boundaries with daughter and daughter's [boyfriend]."  (R. at 563.)

### 2      Steven Meyer, Ph.D.

Plaintiff was examined by consulting psychologist, Dr. Meyer, for disability purposes on on November 23, 2011.  Plaintiff reported that she was applying for disability due to her severe depression.  Plaintiff denied any problems with other people including those in authority, and reported no problems with co-workers or supervisors.  On mental status examination, Dr. Meyer found Plaintiff was alert, clear and oriented to person, place, time and situation.  She was able to repeat six digits forward and four digits backwards revealing below average immediate auditory memory skills.  Her short-term memory abilities were intact as she was able to recall all three words after five minutes.  Her concentration was fair, her task persistence was good, and her work pace somewhat slow.  Plaintiff reported spending her day watching television, visiting with her daughter, and visiting with her cousin.  She reported doing the cooking, cleaning and shopping for the household.  It was noted that she drove herself to the evaluation.  She was described as clean and neat in appearance with normal fine and gross motor abilities.  Plaintiff was diagnosed with a major depressive disorder and anxiety disorder.  Dr. Meyer concluded that Plaintiff has the ability to relate appropriately and predictably in a nonpublic setting, with intermittent interactions with coworkers and supervisors.  Dr. Meyer found that Plaintiff would have little difficulty comprehending, remembering or carrying out simple or moderately complex routine work instructions.  Dr. Meyer concluded that Plaintiff's ability to perform repetitive tasks is no more than minimally impaired, and her ability to cope with stress is moderately impaired due to anxiety and depression.  (R. at 503-07.)

### 3.      Ohio Rehabilitation Services Commission

Plaintiff applied for services through the Ohio Rehabilitation Services Commission,

reporting that she was disabled due to anxiety, depression and trouble lifting.  (R. at 529.)  She

was found to be eligible under their standards on July 23, 2010, based on "a physical or mental

impairment which causes a substantial impediment to employment."  (R. at 532.)  The Certificate

of Eligibility also indicated that Plaintiff requires vocational rehabilitation services because she

experiences frequent crying spells, anhedonia, hopelessness, worthlessness, guilt, panic attacks,

nightmares, sleeping too much, slowed thought process, difficulty with concentration and short

term memory.  Additionally, it was noted that her ulnar neuropathy limits Plaintiff's ability to lift

and the range of motion in her right arm and that symptoms of  irritable bowel syndrome would

create a need for special provisions in the workplace.  The counselor concluded that Plaintiff can

find competitive employment if multiple supports are in place to assist her.  (*Id.*)

### 4.      State Agency Review

In December 2011, after review of Plaintiff's medical record, Karen Terry, Ph.D., a state

agency psychologist, assessed Plaintiff's mental condition.  (R. at 118-24.)  Dr. Terry opined that

Plaintiff was moderately limited in her activities of daily living, in maintaining social

functioning and in maintaining concentration, persistence, or pace; with no episodes of

decompensation of an extended duration.  (R. at 118.)  She further determined that the evidence

did not establish the presence of the "C" criteria.  (*Id.*)  Dr. Terry concluded that Plaintiff was

fully credible in regards to her psychological symptoms.  (R. at 120.)  In March 2012, state

agency psychologist Aracelis Rivera, Psy.D., reviewed the file and affirmed Dr. Terry's

assessment.  (R. at 133-39.)[1]

---

[1]Plaintiff also treated with her primary care physician, Dr. Ellis Frazier, M.D. beginning
in 2008 for her physical conditions as well as anxiety and depression.  In her Statement of
Errors, however, Plaintiff does not fault the ALJ for his treatment of Dr. Fraizer's medical

# IV.   ADMINISTRATIVE DECISION

On June 21, 2013, the ALJ issued his decision.  (R. at 36–54.)  The ALJ found that

Plaintiff met the insured status requirements of the Social Security Act through the date of the

decision.  (R. at 41.)  At step one of the sequential evaluation process,[2] the ALJ found that

Plaintiff had not engaged in substantially gainful activity since December 10, 2010.  (*Id.*)  The

ALJ found that Plaintiff had the severe impairments of status post remote ulnar nerve

transposition; major depression; a generalized anxiety disorder; and a dependent personality

disorder.  (*Id.*)   He further found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments described in 20 C.F.R.

Part 404, Subpart P, Appendix 1, specifically comparing her impairments against Listings 1.02

(major dysfunction of a joint), 12.04 (affective disorder), and 12.06 (anxiety-related disorder).

---

opinions.  Thus the Undersigned does not include a lengthy discussion of his treatment notes and
opinions.

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-
step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a
dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d
727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five
questions:

1.      Is the claimant engaged in substantial gainful activity?
2.      Does the claimant suffer from one or more severe impairments?
3.      Do the claimant's severe impairments, alone or in combination, meet or
        equal the criteria of an impairment set forth in the Commissioner's Listing of
        Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.      Considering the claimant's residual functional capacity, can the claimant
        perform his or her past relevant work?
5.      Considering the claimant's age, education, past work experience, and residual
        functional capacity, can the claimant perform other work available in the national
        economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

11

(R. at 42-44.)  At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, [the ALJ] find[s] that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that [Plaintiff] can frequently push or pull with the right upper extremity; occasionally climb ladders, ropes and scaffolds; can use the right upper extremity for frequent fingering, handling, and feeling. [The ALJ] also find[s] that she is mentally limited to work in a relatively static environment with no fast work pace and occasional contact with supervisors or co-workers, but no contact with the general public.

(R. at 44.)  The ALJ found Plaintiff's allegations and testimony were not credible.  (R. at 50-52.) The ALJ gave "great" weight to the opinions of the "State agency consultants" finding their assessments consistent with the medical evidence overall, consistent with the credible portion of activities of daily living evidence, and not contradicted by any treating source shown to be familiar with SSA and occupational standards.  (R. at 52.)  He assigned "some" weight to the assessment of the state agency reviewing physicians, Drs. Manos and Goorey and the consultative physical examiner, Dr. Swedberg, finding "that the claimant is slightly more limited than detailed in the opinions of the state agency consultants based on the totality of the evidence in the record."  (R. at 53.)  The ALJ gave "no" weight to the September 16, 2011, opinion of treating physician, Dr. Frazier, that Plaintiff was unemployable, noting that this opinion contains no function-by-function analysis, was inconsistent with the medical evidence of record, and addressed an area reserved to the Commissioner.  Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform her past relevant work as a paper core machine operator. (R. at 53.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 54.)

## V.   STANDARD OF REVIEW

12

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

In her Statement of Errors, Plaintiff first asserts that the ALJ's RFC is not supported by substantial evidence because the ALJ failed to properly evaluate all opinions in accordance with 20 C.F.R. § 404.1527 and Social Security Ruling 06-03p.  Plaintiff also asserts that the ALJ's finding that Plaintiff could perform her past relevant work as a paper core operator is not consistent with the record.  The Court discusses each of these contentions of error in turn.

**A.** **The ALJ's consideration of the medical opinions of record**

Plaintiff first asserts that the ALJ did not properly evaluate all opinions in the record in accordance with the appropriate regulations and Social Security Ruling 06-03p.  Specifically, Plaintiff contends that the ALJ either failed to consider altogether or failed to properly evaluate the opinions of state agency, consulting psychologist, Dr. Meyer; consulting psychologists, Dr. Hagen; the August 9, 2011, opinion of Plaintiff's counselor, Ms. Perrott; the report from the Ohio Rehabilitation Services Commission; and two reports from the Scioto Paint Valley Mental Health Vocational Services Department dated July 22, 2010 and September 29, 2010.  Plaintiff in effect argues that the ALJ should have given more weight to these opinions and treatment notes.  The Undersigned concludes, however, the ALJ properly discussed and weighed all the medical opinions of record and developed an RFC that was supported by substantial evidence.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(d). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

14

With respect to Plaintiff's mental health impairments, the ALJ expressly indicated that "great weight is given to the opinions of the State agency consultants." (R. at 52.) The ALJ explained that their opinions were "consistent with the medical evidence overall [and] consistent with the credible portion of activities of daily living evidence." (*Id*.) Plaintiff contends that, by this statement, the ALJ was referring exclusively to the opinions of State agency consultants Karen Terry, Ph.D. and Aracelis Rivera, Psy.D., who did not examine Plaintiff. Plaintiff maintains that, because Dr. Meyer conducted a consultive examination, the statement by the ALJ that he gave great weight to the State agency consultants excludes the opinion of Dr. Meyer. Closer scrutiny of the decision reveals, however, that the ALJ considered four "state agency consultant" opinions, including both those who examined Plaintiff and those who provided only a review of the medical records. The ALJ determined that all of the consultants' opinions were consistent with each other and the record as a whole. The ALJ discussed and gave proper weight to consultative examiners, Dr. Meyer and Dr. Hagen, as well as the state agency reviewing physicians, Dr. Terry and Dr. Riveria.

Contrary to Plaintiff's assertions, the ALJ properly discussed Plaintiff's consultative examination with Dr. Meyer, Ph.D. The ALJ thoroughly reviewed all of the symptoms Plaintiff reported, the results of psychological testing, and noted her daily activities of living. The ALJ acknowledged that Dr. Meyer diagnosed Plaintiff with a major depressive disorder and anxiety disorder. (*Id*.) The ALJ also noted that Dr. Meyer "opined that the claimant has the ability to relate appropriately and predictably in a nonpublic setting, with intermittent interactions with coworkers and supervisors; the claimant would have little difficulty comprehending, remembering or carrying out simple or moderately complex routine work instructions; the

claimant's ability to perform repetitive tasks is no more than minimally impaired at the time of the evaluation, her attention and concentration were fair, and she reported no difficulty performing of work on past jobs.  The ALJ noted that the claimant's ability to cope with stress is moderately impaired due to anxiety and depression." (R. at 49.)

Despite Plaintiff's contrary arguments, the ALJ clearly considered Dr. Meyer's opinion among those of the consultive examiners he afforded great weight as evidenced by the fact that the limitations Dr. Meyer discussed were consistent with the ALJ's RFC determination.  Dr. Meyer opined that Plaintiff would require "a nonpublic setting, with intermittent interactions with coworkers and supervisors."  The ALJ accommodated these limitations by restricting Plaintiff to only "occasional contact with supervisors or co-workers, but no contact with the general public." (R. at 44.)  Likewise, in order accommodate her moderate impairment with coping with stress, the ALJ limited Plaintiff to "a relatively static environment with no fast work pace."[3]  (*Id*.)  Plaintiff's contention that the ALJ did not give great weight to Dr. Meyer's opinion because of his inartful categorization of both examining and non-examining medical sources as "State agency consultants" is without merit.

_____

[3]In her Reply, Plaintiff belatedly makes an argument that the ALJ's RFC determination to limit Plaintiff  to "a relatively static environment with no fast work pace" did not properly accommodate Dr. Meyer's opinion regarding her moderate impairment with coping with stress. Nowhere in her Statement of Errors did Plaintiff raise this issue.  Instead, it comes only to rebut the Commissioner's passing statement that Plaintiff failed to explain how the RFC was inconsistent with Dr. Meyer's opinion.  (Comm'r Mem. in Opp., at p.5.)  Plaintiff has waived the issue of whether the RFC properly incorporated Dr. Meyer's opinion and limitations by failing to raise the issue in her Statement of Errors. *See Kennedy v. Comm'r of Soc*., Sec., 87 F. App'x 464, 466 (6th Cir. 2003) ("issues which are 'averted to in a perfunctory manner, unaccompanied by some effort at developed augmentation, are deemed waived"') (*quoting United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

Plaintiff also apparently takes exception to the manner in which the ALJ considered Plaintiff's psychological evaluation with James Hagen, Ph.D., which was conducted at the request of the state agency.[4] The ALJ noted that Dr. Hagen diagnosed major depressive disorder, panic disorder with agoraphobia and Dependent Personality disorder. (R. at 48.) Dr. Hagen did not opine on any functional limitations. Nevertheless, a review of the record and decision reveals that the ALJ gave great weight to all of the state agency consultative opinions, Dr. Hagen.

Plaintiff refers to the fact that Dr. Hagen assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 50.[5] Plaintiff seems to contend that this GAF score suggests that Plaintiff had greater limitations than those set out in the RFC because it represents severe symptoms or serious impairment in social or occupational functioning. A GAF score, however, represents a "snapshot" of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 F. App'x 191, 194 n. 2 (6th Cir. 2003); *see also* DSM-IV-TR at 32–34. "As such, a GAF assessment is isolated to a relatively brief period of time, rather than being significantly probative of a person's ability to perform mental work activities on a full-time basis." *Arnold v. Astrue*, No. 10-cv-13, 2010 WL 5812957, at *8 (S.D. Ohio Oct. 7, 2010). Further, "the Commissioner has declined to endorse the GAF score for use

---

[4]As noted above, the ALJ also expressly stated that he gave great weight to the opinions of State agency psychologists Karen Terry, Ph.D., and Aracelis Riveria, Psy.d., who opined in December 2011 and March 2012 respectively, that Plaintiff was not disabled and could work with certain nonexertional limitations. (R. at 118-124, 133-139.) Plaintiff does not challenge the ALJ's reliance or weighing of these opinions.

[5]"A GAF score of 41 to 50 means that the patient has serious symptoms . . . or any serious impairment in social, occupational, or school functioning (e.g., no firends, unable to keep a job)." *White v. Comm'r of Soc. Sec*., 572 F.3d 272, 276 (6th Cir. 2009) (quoting *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 924 n.1 (E.D. Mich. 2005).

in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings." *Kennedy v. Astrue,* 247 F. App'x 761, 766 (6th Cir. 2007) (internal quotation marks and citations omitted). "While GAF scores are "useful for planning treatment," a GAF score does not reflect the clinician's opinion of functional capacity because "in situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two." DSM-IV-TR at 32-33.  Plaintiff has not pointed to any authority that would compel the ALJ or this Court to credit a GAF assessment and that Court's independent search has uncovered none.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006); *see also* 65 Fed. Reg. 50746, 50764-65 (2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings.") (comment to final rules).

Plaintiff focuses on the ALJ's statement, after consideration of the opinion evidence of record, that "[t]here is not other treating source opinion and no other opinions indicating that [Plaintiff] is disabled."  (R. at 53.)  She concludes from this statement that the ALJ ignored all the other evidence in the record.  Implicit in her argument that the ALJ did not consider opinions offered by other sources is that she contends more weight should have been given to other evidence of record.  The ALJ, however, is "not required to analyze the relevance of each piece of evidence individually.  Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'"  *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953); accord *Kornecky*, 167 F. App'x at 508 ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").

As to her specific contentions regarding the ALJ's purported failure to consider all of the medical opinion evidence, Plaintiff argues that the ALJ should have afforded weight to a Daily Activities Questionnaire completed by Laura Perrot, LPCC, in August 2011.  In it, Ms. Perrot noted that Plaintiff would be unable to complete work tasks without assistance, was intimidated in getting along with others in the workplace, and attempts to return to work were thwarted by low self-esteem and low self worth.  Ms. Perrot is a licensed counselor.  She is not considered an acceptable medical source.  *See* 20 C.F. R. § 404.1513(a) (defining acceptable medical sources." Because a counselor or social worker is not considered an acceptable medical source, an ALJ is not permitted to assign "controlling" weight to it. *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  Moreover, Ms. Perrot's Questionnaire response was not an opinion about a functional limitation that required the ALJ to weigh it but instead was more a general comment about how to integrate Plaintiff back into the workforce. *See Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) ("Since Dr. Naum made no medical judgments, the ALJ had no duty to give such observations . . . controlling weight or provide good reasons for not doing so.").

Plaintiff also faults the ALJ for failing to analyze a two-page treatment note from July 22, 2010 from Scioto Paint Valley Mental Health Services.  In it, an unknown evaluator found that Plaintiff's family relationships and work were affected by her anxiety and that she has "serious limitations" in self direction and work tolerance.  (Pl's Stmt. of Errors, at p. 9, citing R. at 561-562.)  This note, however, was not signed by a doctor as far as the Undersigned can glean and cannot be an acceptable medical source entitled to weight.  20 C.F.R. 404.4513(a).

Similarly, Plaintiff points to a September 2010 treatment note from Scioto Paint Valley Mental Health Vocational Services in which the Specialist indicated that a "job coach will need

19

to stay with her or in close proximity" to monitor her anxiety.  (Pl's Stmt. of Errors at 9, citing R. at 546.)  But, again, like the two pieces of evidence discussed above, this note was not authored by an acceptable medical source.   And like Ms. Perrot's questionnaire response above, this was not an opinion about a function limitation that required weight to be given, but was more a general comment about how to integrate Plaintiff back into the workforce. *Bass v. McMahon*, 499 F.3d at 510 (noting that the regulation defines medical opinions as assertions involving judgments about a patient's "symptoms, diagnosis and prognosis") (quoting 20 C.F.R. § 404.1527(a)(2)).  Because none of the treatment records discussed above were from a doctor, and the alleged limitations were not medical in nature, the ALJ did not have to explicitly weigh or discuss them. *Walker v. Sec'y of Heath & Human Servs.,* 884 F.2d 241, 245 (6th Cir. 1989) (holding that an ALJ need not address every piece of evidence in the record).

Finally, Plaintiff argues that the ALJ did not consider an evaluation from the Ohio Rehabilitation Services Commission about her need for workplace accommodations.  This assertion does not bear out.  As noted above, in that assessment, the evaluator noted that Plaintiff could "find competitive employment if multiple supports are in place to assist you."  (R. at 532.)  The ALJ explicitly noted that "[t]he determination by the Ohio Rehabilitation Services Commission on July 23, 2010 that irritable bowel syndrome symptoms is a severe physical impairment that creates a need for special provisions in the workplace is not binding."  (R. at 50-51.)  The determination by another governmental agency is not binding on the Social Security Administration or the ALJ.  *Turcus v. Soc. Sec. Admin.*, 110 F. App'x 630, 632 (6th Cir. 2004) ("[A] decision by another government agency as to an individual's disability is not binding upon the Social Security Administration."); 20 C.F.R. § 404.1504 ("A decision by any

20

nongovernmental agency or any other governmental agency about whether you are disabled . . . is based on its rules and its not our decision about whether your are disabled . . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us.").   To be sure, the ALJ did consider this evaluation and properly did not assign it any weight.

Here, the ALJ placed a variety of physical and non-exertional limitations on Plaintiff's RFC in order to provide the accommodations for the limitations he found credible. "Discretion is vested in the ALJ to weigh all the evidence." *Collins v. Comm'r of Soc. Sec*., 357 F. App'x 663, 668 (6th Cir. 2009).  Here, the Undersigned concludes that the ALJ did not abuse this discretion in the manner in which he evaluated the opinion evidence of record.

Accordingly, it is **RECOMMENDED** that the Court find Plaintiff's challenges to the ALJ's weighing of the opinion evidence to be without merit.

### B.  Past relevant work and hypothetical question to the VE

Plaintiff next contends that the ALJ's determination that Plaintiff is capable of performing her past relevant work as a paper core machine operator is not supported by substantial evidence.  She maintains that the ALJ improperly relied on the VE's testimony which Plaintiff claims was inaccurate.  Specifically, Plaintiff asserts that the VE improperly separated her past relevant work as a Tech 3, which was a composite job having elements of two or more occupations into its varying operations in response to the hypothetical question.  She argues that the ALJ's reliance upon this inaccurate testimony renders the finding that Plaintiff can perform her past relevant work unsupported by substantial evidence.  The Undersigned disagrees.

The VE was present and heard all of Plaintiff's testimony regarding the performance of her past work. In describing her past job at Mead, Plaintiff indicated that she "learned how to run the paper machine" (R. at 72.)  In that position, she "had to set the rolls up on the back on the stands and there you could run five rolls of paper at once. And they all had to be threaded up through the machine and you had to set it up for what size paper you were cutting . . . that was the person running the machine."  (R. at 72-73.)  Plaintiff noted that "when you get down to the bottom where it's called the Layboy . . . you just have to make sure you kept your skids in there."  (R. at 72-73.)

After Plaintiff's testimony, the ALJ asked the VE to characterize Plaintiff's past work. The VE responded that Plaintiff had "basically two jobs . . . from 1988 through June of 1998 [and from] October of 1998 through almost to 2008."  (R. at 99.)  The first job was that of "a forklift driver. . . . DOT is 921.683-050, that's an SVP of three, semiskilled.  Strength levels medium for DOT."  (R. at 99.)  The VE testified that the second job, based on "the testimony she's talking about [is] a machine operator on paper core.  The paper off bearer." (*Id.*)  The VE characterized this position as "a paper core machine operator.  DOT is 640.685-072. That's an SVP of two, unskilled, strength level's light for DOT, but through the testimony being medium as performed." (*Id.*)

On appeal to this Court, Plaintiff for the first time argues that the VE incorrectly categorized her past work as a paper core machine operator.  Plaintiff now maintains that her past job incorporated elements of paper-reel operator and Layboy tender.  Put another way, Plaintiff now asserts that the ALJ erred at Step Four of the sequential evaluation process by failing to recognize that her past relevant work was a "composite" job which, according to

Plaintiff, she does not have the functional capacity to perform. *See* SSR 82–61 ("composite jobs have significant elements of two or more occupations").

At Step Four of the five-step analysis, the ALJ conducts a "comparison of the physical demands of the claimant's past relevant work with [her] present mental and physical capacity." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (internal quotations and citations omitted).  At this juncture, a plaintiff bears the burden to prove that she cannot return to her past work.  *Id*.  The applicable regulations permit, but do not require, an ALJ to use the services of a vocational expert to determine whether a claimant can return to her past relevant work.  *Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010); 20 C.F.R. § 404.1560(b)(2).

Even if Plaintiff is correct, her position does not warrant remand.  Plaintiff's failure to raise this issue during the hearing precludes her from asserting it now as grounds for relief.  *See West v. Comm'r of Soc. Sec.*, No. 2:11–cv–448, 2012 WL 3151209, at * 6 (S.D. Ohio Aug. 2, 2012); *Harris v. Comm'r of Soc. Sec.*, No. 1:11-cv-1290, 2012 WL 4434078 (N.D. Ohio Sept. 24, 2012).  The Court of Appeals for the Sixth Circuit and many other courts have generally concluded that a plaintiff's failure to object to testimony offered by a vocational expert at the time of the administrative proceeding waives his or her right to raise such issues in the district court. *Hammond v. Chater*, No. 96-3755, 116 F.3d 1480 (6th Cir. 1997) (unpublished) (finding the plaintiff's failure to raise objections to the VEs testimony waived the argument on appeal) (citing *Harper v. Sec'y of Health & Human Servs.*, 978 F.2d 260, 265 (6th Cir. 1992) (per curiam)); *Dantzer v. Comm'r of Soc. Sec.*, No. 3:09–CV–2198, 2011 WL 1113458, at *13 (N.D.

Ohio Jan. 4, 2011) (R & R adopted) ("Failure to challenge the basis of the VE's testimony at the administrative hearing constitutes a waiver of the issue in the district court.")[6]

*Bechtold v. Massanari*, 152 F. Supp. 2d 1340, 1347 (M.D. Fla. 2001), is particularly instructive.  There the district court found that the plaintiff's failure to object to the VE's characterization of her past relevant work at the administrative hearing resulted in a waiver: "[W]hen squarely presented with an opportunity to object to the characterization by the administrative law judge of the nature of her past relevant employment, [the claimaint] failed to do so.  Such failure constitutes a waiver of her right to raise the argument before this Court at this time." *Id*.

Plaintiff is lodging a similar argument here.  During the VE's testimony, the ALJ inquired about Plaintiff's past work as a paper core machine operator.  (R. at  103.)  Plaintiff did not complain or otherwise alert the ALJ that she believed he had mischaracterized her job.  The VE stated that Plaintiff could perform her past job as paper core machine operator in response to several alternative hypothetical questions.  During each of these hypotheticals, Plaintiff never objected to the VE or ALJ's characterization of her past relevant work.  Further, Plaintiff was

_____

[6] Plaintiff maintains that the Supreme Court abrogated the concept of waiver in social security cases in *Sims v. Apfel*, 530 U.S. 103 (2000).  (Pl's Reply at p. 5.)  *Sims*, however, is inapposite here.  The Court in *Sims* held that a claimant was not required to exhaust issues in a request for review by the Social Security Appeals Council in order to preserve judicial review of those issues because neither the statute nor agency regulations required issue exhaustion.  *Id*. at 107.  The Court found that the basis for a judicially imposed issue-exhaustion requirement, as typically espoused as the rule that appellate courts will not consider arguments not raised before trial courts, was inapplicable in light of the non-adversarial nature of Social Security proceedings.  In *Sims*, the Commissioner argued, and the Court rejected the contention that, in order to obtain judicial review of an issue, a Social Security claimant not only must obtain a final decision on his claim for benefits, but also must specify that issue in his request for review by the Council.  The issue of waiver and "whether a claimant must exhaust issues before the ALJ" was not before the Court.  *Id*.

represented by counsel at the hearing.  Although he asked questions of the VE regarding such matters the ALJ's reference to fast-pace work and additional rest/breaks, Plaintiff's attorney asked no questions regarding whether Plaintiff's past work was a composite job.  Plaintiff's attorney did not question or object to the VE's characterization of Plaintiff's past work as a paper core machine operator.  Consequently, Plaintiff may not now complain because the ALJ relied upon the VE's description of Plaintiff's past work when Plaintiff failed to raise this issue during the hearing. *Cf. McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (finding plaintiff could not complain about substance of vocational expert's testimony when counsel failed to cross examine the expert on the matter during the administrative hearing).

The Undersigned concludes that Plaintiff waived her objection to the VE's characterization of her past work and that the ALJ reasonably relied upon the VE's testimony that her past relevant work was as a paper core machine operator to conclude that she was not disabled.  Accordingly, it is **RECOMMENDED** that the Court find Plaintiff's challenges to the ALJ's reliance on the VE's testimony to be without merit.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: February 22, 2016                    /s/ *Elizabeth A. Preston Deavers*
                                           Elizabeth A. Preston Deavers
                                           United States Magistrate Judge